**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ykrivoshey@bursor.com
          bscott@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HUNT, DAN KODAMA, and MICHAEL ODELL, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>THE VAIL CORPORATION d/b/a VAIL RESORTS MANAGEMENT COMPANY, AMERICAN CLAIMS MANAGEMENT, BEECHER CARLSON INSURANCE, LLC, and UNITED SPECIALTY INSURANCE CO.<br><br>                                        Defendants. | Case No. 4:20-cv-02463-JSW<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Brian Hunt, Dan Kodama, and Michael Odell ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants The Vail Corporation d/b/a Vail Resorts Management Company ("Vail Resorts Management"), American Claims Management ("American Claims"), Beecher Carlson Insurance ("Beecher Carlson"), and United Specialty Insurance Co. ("United Specialty") (collectively "Defendants").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**A.     Vail Resorts Management's Decision to Close Its Ski Resorts**

1.     Defendant Vail Resorts Management has made the unconscionable decision to retain its millions of customers' passholder fees while closing 100% of its mountain resorts as the novel coronavirus, COVID-19, rages throughout the world and the United States economy has gone into a deep recession.

2.     Vail Resorts Management is the operator of more than 34 North American ski resorts throughout the United States.  Vail Resorts Management sells "Epic Passes" promising "unlimited, unrestricted skiing at [its] best resorts."[1]  Vail Resorts Management also promises that its passes are the "best way to ski … 7 days a week."[2]  To visit Vail Resorts Management's mountain resorts, consumers can purchase (1) annual passes for prices ranging from $319 to $979; (2) weekly passes from $391 to $766; (3); or day/multi-day passes from $67 to $766 (called "Epic Day Passes").  For customers that buy Epic Day Passes, they have the option to buy passes in packages for "1 to 7 total days."

3.     On March 25, 2020, Vail Resorts Management announced that it was closing all of its mountain resorts indefinitely due to state quarantine orders going into effect nationwide.

---

[1] https://www.vail.com/plan-your-trip/lift-access/passes/epic-pass.aspx (last accessed April 9, 2020).

[2] https://www.epicpass.com/passes/tahoe-local-pass.aspx (last accessed April 9, 2020).

4.      Subsequently, Vail Resorts Management announced that its "North American resorts and retail stores will remain closed for the 2019-20 winter ski season."[3]  Vail Resorts Management has not refunded any consumers for their lost mountain resort access.  Rather, for annual pass-holders, Vail Resorts Management has simply deferred all auto-renewal charges and spring deadlines (for those people that did not pre-pay for the entire season).  Further, for Epic Day Pass customers, Vail Resorts Management has explicitly stated that, despite Vail Resorts Management's closures, the passes are "non-refundable and non-transferable to another season."[4] Accordingly, customers who did not have a chance to use all of their purchased passes under the Epic Day Pass program get zero consideration or compensation for their inability to use those unused, purchased days, even if they wanted to.  Resultingly, Vail Resorts Management has unjustly enriched itself by retaining passholder fees of hundreds of thousands of consumers – while denying passholders all access to all of Vail Resorts Management's mountain resorts.

5.      Plaintiffs Hunt and Kodama seek relief in this action individually, and on behalf of all of Vail Resort Management's customers nationwide that purchased annual passes for the 2019-2020 season or Epic Day Passes for the 2019-2020 season who, as of March 25, 2020, had not used up all of the days remaining on their Epic Day Passes for Vail Resort Management's violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750*, et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, violation of Hawaii's Unfair Deceptive Acts or Practices Statute, H.R.S. § 480-1, *et seq.*, Uniform Deceptive Trade Practices Act, H.R.S. § 481A, *et seq.*, False Advertising Law, H.R.S. § 708-871, *et seq.*, for breach of express warranties, negligent misrepresentation, unjust enrichment, money had and received, conversion, and breach of contract.

//

//

//

---

[3] https://www.snow.com/info/covid-19-update (last accessed April 10, 2020).

[4] https://www.snow.com/info/message-to-our-guests.aspx (last accessed April 10, 2020).

**B.** **The Insurers' Refusal to Honor Season Ski Pass Insurance Policies**

6.      In concert with Vail Resorts Management, Defendants American Claims, Beecher Carlson, and United Specialty (the "Insurers") have breached their contracts with consumers who purchased season ski pass insurance to accompany their Epic Day Pass purchases.

7.      Defendants sell add-on season ski pass insurance to consumers to accompany their Epic Passes.  The cost of the season ski pass insurance ranges from $12 to $22 for insuring child ski passes to $17-$32 for insuring adult/teen ski passes.[5]

8.      Consumers purchase season ski pass insurance because they believe it will protect their purchase and ensure that they will receive a refund of their purchase if there is an unforeseen event that will preclude them from using their ski passes.

9.      Defendants advertise their season ski pass insurance to consumers by advertising that they can "protect [their] pass with pass insurance."[6]  Indeed, Defendants market their insurance by reminding consumers that "You've saved.  You've planned.  You've looked forward to skiing or riding for months.  **But things don't always go according to plan.  What if you get sick or injured and are unable to use your ski pass?  What if you are laid off from your job?**  Pass Insurance is offered through Beecher Carlson Insurance Co., **to cover you and your investments when the unexpected happens**."[7]

10.      Yet, when the unexpected happened and consumers and corporations were forced to quarantine as COVID-19 swept the globe, Defendants blatantly repudiated their promise "to cover [consumers] and [their] investments when the unexpected happens."[8]

11.      Defendants' insurance policy states that it protects against loss of use resulting from "**unforeseen perils** occurring after the effective date of coverage" including situations where the insured is "subpoenaed, required to serve on a jury, hijacked, **quarantined.**"  Certificate of Season Ski Pass Insurance, **Ex. A** (emphasis added).  However, Defendants are refusing to honor this

---

[5] https://www.epicpass.com/info/pass-insurance.aspx (last accessed April 23, 2020).

[6] *Id.*

[7] *Id.* (emphasis added)

[8] *Id.*

policy, instead informing its insureds that it will not provide coverage because it does not fall within the "Sickness" and "Natural Disaster" perils listed in the policy.

12.     Resultingly, Defendants have unjustly enriched themselves by retaining passholder and insurance fees of hundreds of thousands of consumers – while denying passholders coverage under the insurance policy.

13.     Plaintiffs Kodama and Odell also seek relief in this action individually, and on behalf of all of Defendants' customers nationwide that purchased season ski pass insurance for the 2019-2020 season who were denied insurance coverage after Vail Resorts Management's resort closures for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, violation of Hawaii's Unfair Deceptive Acts or Practices Statute, H.R.S. § 480-1, *et seq.*, Uniform Deceptive Trade Practices Act, H.R.S. § 481A, *et seq.*, False Advertising Law, H.R.S. § 708-871, *et seq.*, for breach of express warranties, negligent misrepresentation, unjust enrichment, money had and received, conversion, and breach of contract.

## **PARTIES**

14.     Plaintiff Brian Hunt is a citizen of California, residing in San Ramon, California. Mr. Hunt is an annual passholder for Vail Resorts.  In June of 2019, Mr. Hunt purchased an annual Tahoe Local season pass for $499 which promised mountain access from October 2019 to June 2020, so long as there was snow.  On March 25, 2020, Vail Resort Management notified passholders that it closed all 34 of its North American resorts.  Vail Resort Management has retained the full amount of his annual pass fee even though Plaintiff does not have access to any of Vail Resort Management's resorts.  Further, Vail Resort Management has not refunded Plaintiff any part of his annual pass fee for March 25 through the present, when Defendant's resorts were closed (and continue to remain closed).  Plaintiff signed up for Vail Resort Management's annual pass with the understanding that he would be able to access Vail Resort Management's resorts from October 2019 through June 2020, so long as there was snow on the mountains.  Plaintiff would not have paid for the annual pass, or would not have paid for it on the same terms, had he

1   known that he would not have access to any of Vail Resort Management's resorts.  Plaintiff

2   continues to face imminent harm, as Vail Resort Management retains annual passholder's season

3   pass fees while all of its resorts remain closed.

4          15.     Plaintiff Dan Kodama is a citizen of Hawaii, residing in Honolulu, Hawaii.  Mr.

5   Kodama is an Epic Day passholder for Vail Resorts.  On October 13, 2019, Mr. Kodama purchased

6   four Epic 4 Day passes and pass insurance for $1313.9, which promised mountain access to Vail

7   Resort Management's Tahoe resorts, and insurance coverage from the date of purchase to the end

8   of the ski season.  On March 25, 2020, Vail Resorts Management notified passholders that it closed

9   all 34 of its North American resorts.  Vail Resorts Management has retained the full amount of his

10  Epic 4 Day pass fees even though Plaintiff does not have access to any of Vail Resort

11  Management's resorts.  Further, Vail Resort Management has not refunded Plaintiff any part of his

12  Epic 4 Day pass fees for March 25 through the present, when Defendant's resorts were closed (and

13  continue to remain closed).  Plaintiff signed up for Vail Resort Management's Epic 4 Day pass

14  with the understanding that he would be able to access Vail Resort Management's resorts for four

15  days during the 2019-2020 ski season.  Plaintiff would not have paid for the Epic 4 Day pass, or

16  would not have paid for it on the same terms, had he known that he would not have access to any

17  of Vail Resort Management's resorts.  Plaintiff continues to face imminent harm, as Vail Resort

18  Management's retains Epic Day passholder's pass fees while all of its resorts remain closed.

19         16.     Plaintiff Kodama signed up for Defendants' season ski pass insurance with the

20  understanding that he would be able to use the insurance to cover any losses associated with

21  unforeseen circumstances.  Following closure of Vail Resort Management's resorts, Plaintiff

22  notified Defendants that he would be seeking coverage for the loss of his passes.  On April 9, 2020,

23  Defendants issued a letter stating that it was their position that loss relating to COVID-19 closures

24  was not covered by the season ski pass policy.  Plaintiff would not have paid for the season ski pass

25  insurance, or would not have paid for it on the same terms, had he known that Defendants would

26  not provide coverage under the policy for covered "perils."  Plaintiff continues to face imminent

27  harm, as Defendants' retain his Epic Day passholder's pass and insurance fees while refusing to

28  provide coverage under the season ski pass policy.

17.     Plaintiff Michael Odell is a citizen of Tennessee, residing in Greeneville, Tennessee. Mr. Odell is an Epic Day passholder for Vail Resorts.  On September 2, 2019, Mr. Odell purchased four Epic 6 Day passes and pass insurance for $1947.95, which promised mountain access and insurance coverage from the date of purchase to the end of the ski season.  On March 25, 2020, Vail Resorts Management notified passholders that it closed all 34 of its North American resorts. Vail Resorts Management has retained the full amount of his Epic 6 Day pass fees even though Plaintiff does not have access to any of Vail Resort Management's resorts.  Further, Vail Resort Management has not refunded Plaintiff any part of his Epic 6 Day pass fees for March 25 through the present, when Vail Resorts Management's resorts were closed (and continue to remain closed). Plaintiff signed up for Vail Resort Management's Epic 6 Day pass with the understanding that he would be able to access Vail Resort Management's resorts for four days during the 2019-2020 ski season.  Plaintiff would not have paid for the Epic 6 Day pass, or would not have paid for it on the same terms, had he known that he would not have access to any of Vail Resort Management's resorts.  Plaintiff continues to face imminent harm, as Vail Resort Management's retains Epic Day passholder's pass fees while all of its resorts remain closed.

18.     Plaintiff Odell signed up for Defendants' season ski pass insurance with the understanding that he would be able to use the insurance to cover any losses associated with unforeseen circumstances.  Following closure of Vail Resort Management's resorts, Plaintiff notified Defendants that he would be seeking coverage for the loss of his passes.  On April 9, 2020, Defendants issued a letter stating that it was their position that loss relating to COVID-19 closures was not covered by the season ski pass policy.  Plaintiff would not have paid for the season ski pass insurance, or would not have paid for it on the same terms, had he known that Defendants would not provide coverage under the policy for covered "perils."  Plaintiff continues to face imminent harm, as Defendants' retain his Epic Day passholder's pass and insurance fees while refusing to provide coverage under the season ski pass policy.

19.     Defendant The Vail Corporation, is a Colorado corporation, with its principal place of business at 390 Interlocken Crescent, Broomfield, CO 80021.  Defendant is the operator of 34 ski resorts in North America, and touts itself as "the premier mountain resort company in the

world."[9]  Defendant conducts substantial business throughout the United States, and specifically in the state of California.

20.     Defendant Beecher Carlson LLC is a California limited liability company, with its principal place of business at Six Concourse Parkway, Suite 2300, Atlanta, GA 30328.  Defendant is the insurer of Vail Resort Management's season ski pass insurance.  Defendant conducts substantial business throughout the United States, and specifically in the state of California.

21.     Defendant American Claims Management is a California corporation, with its principal place of business at 2544 & 2548 Campbell Place, Carlsbad, CA 92008.  Defendant is the claims administrator of Vail Resort Management's season ski pass insurance.  Defendant conducts substantial business throughout the United States, and specifically in the state of California.

22.     Defendant United Specialty Insurance Co. is a Delaware corporation, with its principal place of business at 160 Greentree Drive, Suite 101, Dover, DE 19904.  Defendant is the underwriter  of Vail Resort Management's season ski pass insurance.  Defendant conducts substantial business throughout the United States, and specifically in the state of California.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and most members of the proposed nationwide class are citizens of states different from the states of Defendants.

24.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.  Defendants Vail Resorts Management, Beecher Carlson, and American Claims Management are registered to do business in the State of California.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and a substantial part of the events giving rise to Plaintiff Hunt's claims took place within this District.

---

[9] http://www.vailresorts.com/Corp/info/who-we-are.aspx (last accessed April 9, 2020).

## CLASS ACTION ALLEGATIONS

26.    Plaintiffs Hunt and Kodama bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all of Vail Resort Management's customers nationwide that purchased annual passes for the 2019-2020 season or Epic Day Passes for the 2019-2020 season who, as of March 25, 2020, had not used up all of the days remaining on their Epic Day Passes (the "Nationwide Epic Pass Class").

27.    Plaintiff Hunt also seeks to represent a subclass defined as all members of the Class who purchased the relevant passes in California (the "California Epic Pass Subclass").

28.    Plaintiff Kodama also seeks to represent a subclass defined as all members of the Class who purchased the relevant passes in Hawaii (the "Hawaii Epic Pass Subclass").

29.    Plaintiffs Kodama and Odell also seek to represent a Class defined as all of Defendants' customers nationwide that purchased season ski pass insurance for the 2019-2020 who were denied coverage relating to losses accrued from Vail Resort Management's resort closures (the "Nationwide Insurance Class")

30.    Plaintiff Kodama also seeks to represent a subclass defined as all members of the Class who purchased the relevant pass insurance in Hawaii (the "Hawaii Insurance Subclass").

31.    Plaintiff Odell also seeks to represent a subclass defined as all members of the Class who purchased the relevant pass insurance in Tennessee (the "Tennessee Insurance Subclass").

32.    Plaintiffs reserves the right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

33.    Excluded from the Classes are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.    Plaintiff Hunt is a member of the Nationwide Epic Pass Class and California Epic Pass Subclass he seeks to represent.

35.     Plaintiff Kodama is a member of the Nationwide Epic Pass Class, Hawaii Epic Pass Subclass, Nationwide Insurance Class, and Hawaii Insurance Subclass he seeks to represent.

36.     Plaintiff Odell is a member of the Nationwide Insurance Class, and Tennessee Insurance Subclass he seeks to represent.

37.     Defendants have hundreds of thousands of customers nationwide that purchased resort passes that cannot be used.  Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

38.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants have breached their contracts with their customers and whether their actions are fraudulent and unlawful.

39.     The claims of the named Plaintiffs Hunt and Kodama are typical of the claims of the Epic Pass Classes in that the named Plaintiffs were exposed to Defendants' false and misleading advertising and were charged for their resort passes promising mountain access for the 2019-2020 ski season despite being barred from entry into Defendant's resort properties and suffered losses as a result.

40.     The claims of the named Plaintiffs Kodama and Odell are typical of the claims of the Insurance Classes in that the named Plaintiffs were exposed to Defendants' false and misleading advertising, were charged for their season ski pass insurance for the 2019-2020 ski season despite, and were denied coverage under the season ski pass coverage.

41.     Plaintiffs are adequate representatives of the Classes because Plaintiffs' interests do not conflict with the interests of the Class members Plaintiffs seek to represent, Plaintiffs have retained competent counsel experienced in prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

42.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION AGAINST DEFENDANT THE VAIL CORPORATION

### COUNT I
### Violation of California's Consumers Legal Remedies Act,
### California Civil Code §§ 1750, *et seq.*
### (Injunctive Relief Only)

43.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

44.     Plaintiff Hunt brings this claim individually and on behalf of members of the proposed Nationwide Epic Pass Class against Defendant Vail Resorts Management.

45.      Plaintiff Hunt also brings this claim individually and on behalf of members of the proposed California Epic Pass Subclass against Vail Resorts Management.

46.     Plaintiff Hunt and Class members are consumers who paid fees for use of Defendant's mountain resorts for personal, family or household purposes.  Plaintiff and the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

47.     Vail Resorts Management's mountain resort access that Plaintiff and Class members purchased from Vail Resorts Management was a "service" within the meaning of Cal. Civ. Code § 1761(b).

48.     Vail Resorts Management's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of services to consumers.

49.     Vail Resorts Management's advertising that consumers would have unlimited access to all of its ski resorts and that its customers would have access to its ski resorts upon paying a fee is false and misleading to a reasonable consumer, including Plaintiff Hunt, because Vail Resorts Management in fact closed all of its mountain resorts while continuing to retain the full price consumers' passes.

50.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein, Vail Resorts Management violated and continues to violate Section 1770(a)(5) of the CLRA, because Vail Resorts Management's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Vail Resorts Management misrepresents the particular characteristics, benefits and quantities of the services.

51.     Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  By engaging in the conduct set forth herein, Vail Resorts Management violated and continues to violate Section 1770(a)(7) of the CLRA, because Vail Resorts Management's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Vail Resorts Management misrepresents the particular standard, quality or grade of the services.

52.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By engaging in the conduct set forth herein, Vail Resorts Management violated and continues to violate Section 1770(a)(9), because Vail Resorts Management's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Vail Resorts Management advertises services with the intent not to sell the services as advertised.

53.     Plaintiff and the Class acted reasonably when they purchased Vail Resorts Management's passes on the belief that Vail Resorts Management's representations were true and lawful.

54.     Plaintiff and the Class suffered injuries caused by Vail Resorts Management because: (a) they would not have purchased or paid for Vail Resorts Management's passes absent Vail Resorts Management's representations and omission of a warning that it would retain members' passholder fees while all mountain resorts nationwide are closed; (b) they would not have purchased passes on the same terms absent Vail Resorts Management's representations and omissions; (c) they paid a price premium for Vail Resorts Management's passes based on its misrepresentations and omissions; and (d) Vail Resorts Management's passes did not have the characteristics, benefits, or quantities as promised.

55.     Under California Civil Code § 1780(a), Plaintiff Hunt and members of the Class seek injunctive and equitable relief for Vail Resorts Management's violations of the CLRA. Plaintiff  Hunt has mailed an appropriate demand letter consistent with California Civil Code § 1782(a).  If Vail Resorts Management fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff Hunt will amend the complaint to include a request for damages as permitted by Civil Code § 1782(d).

56.     Wherefore, Plaintiff Hunt seeks injunctive and equitable relief for these violations of the CLRA.

## COUNT II
### Violation of California's Unfair Competition Law,
### California Business & Professions Code §§ 17200, *et seq.*

57.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

58.     Plaintiff Hunt brings this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiff also brings this claim individually and on behalf of members of the proposed California Epic Pass Subclass against Vail Resorts Management.

59.     Vail Resorts Management is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

60.     Vail Resorts Management's advertising that its passholders would have unlimited access to its mountain resorts, and that its customers would have access to its mountain resorts upon paying a pass fee is false and misleading to a reasonable consumer, including Plaintiff, because Vail Resorts Management in fact closed all of its mountain resorts while continuing to retain the full price of customers' passes.

61.     Vail Resorts Management's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and other applicable law as described herein.

62.     Vail Resorts Management's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Vail Resorts Management's advertising of its passes and its retention of pass fees while its mountain resorts are closed is of no benefit to consumers.

63.     Vail Resorts Management violated the fraudulent prong of the UCL by misleading Plaintiff and the Class to believe that they would have access to Vail Resorts Management's mountain resorts.

64.     Plaintiff and the Class acted reasonably when they signed up for passes based on the belief that they would have access to Vail Resorts Management's mountain resorts.

65.     Plaintiff and the Class lost money or property as a result of Vail Resorts Management's UCL violations because Plaintiff and the Class suffered injuries caused by Vail Resorts Management because: (a) they would not have purchased or paid for Vail Resorts Management's passes absent Vail Resorts Management's representations and omission of a warning that it would retain members' passholder fees while all mountain resorts nationwide are closed; (b) they would not have purchased passes on the same terms absent Vail Resorts

Management's representations and omissions; (c) they paid a price premium for Vail Resorts Management's passes based on Vail Resorts Management's misrepresentations and omissions; and (d) Vail Resorts Management's passes did not have the characteristics, benefits, or quantities as promised.

**COUNT III**
**Violation of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq*.**

66.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiff Hunt brings this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiff Hunt also brings this claim individually and on behalf of the members of the proposed California Epic Pass Subclass against Vail Resorts Management.

68.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

69.     Vail Resorts Management engaged in a scheme of retaining customers' pass fees while 100 percent of its mountain resorts were closed.  Vail Resorts Management's advertising and marketing of its passes as providing access its mountain resorts misrepresented and/or omitted the true content and nature of Vail Resorts Management's services.  Vail Resorts Management's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the promotional materials were intended as inducements to purchase passes, and are statements disseminated by Vail Resorts Management to Plaintiff and Class members.  Vail Resorts Management knew that these statements were unauthorized, inaccurate, and misleading.

70.     Vail Resorts Management's advertising that passholders would have unlimited access to its mountain resorts and that its customers would have access to its mountain resorts upon paying a passholder fee is false and misleading to a reasonable consumer, including Plaintiff, because Vail Resorts Management in fact closed all of its mountain resorts while retaining the full price of customers' passes.

71.     Vail Resorts Management violated § 17500, *et seq*. by misleading Plaintiff and the Class to believe that they would have access to Vail Resorts Management's mountain resorts from October 2019 to June 2020.

72.     Vail Resorts Management knew or should have known, through the exercise of reasonable care that its advertising that customers would have access its mountain resorts is false and misleading.  Further, Vail Resorts Management knew or should have known that it was breaching its contracts with its customers and fraudulently charging fees when it retained all pass fees while all of its mountain resorts were closed.

73.     Plaintiff and the Class lost money or property as a result of Vail Resorts Management's FAL violation because Plaintiff and the Class suffered injuries caused by Vail Resorts Management because: (a) they would not have purchased or paid for Vail Resorts Management's passes absent Vail Resorts Management's representations and omission of a warning that it would retain members' passholder fees while all mountain resorts nationwide are closed; (b) they would not have purchased passes on the same terms absent Vail Resorts Management's representations and omissions; (c) they paid a price premium for Vail Resorts Management's passes based on Vail Resorts Management's misrepresentations and omissions; and (d) Vail Resorts Management's passes did not have the characteristics, benefits, or quantities as promised.

## COUNT IV
### Breach of Express Warranty

74.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

75.     Plaintiffs Hunt and Kodama bring this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiffs

also bring this claim individually and on behalf of the members of the proposed California Epic Pass Subclass against Vail Resorts Management.

76.     In connection with the sale of passes, Vail Resorts Management issues an express warranty that customers would have unlimited access to its mountain resorts, or for the Epic Day Passes, that they would have access to Vail Resorts Management's mountain resorts for a specified number of days.

77.     Vail Resorts Management's affirmation of fact and promise in Vail Resorts Management's marketing and signage became part of the basis of the bargain between Vail Resorts Management and Plaintiffs and Class members, thereby creating express warranties that the services would conform to Vail Resorts Management's affirmation of fact, representations, promise, and description.

78.     Vail Resorts Management breached its express warranty because Vail Resorts Management does not provide unlimited access to its mountain resorts, and, for the Epic Day Passes, does not provide access to resorts even for customers who still have unused Epic Day Passes left for the 2019-2020 season.  In fact, Vail Resorts Management has retained the full amount of its pass fees while 100 percent of its mountain resorts are closed.

79.     Plaintiffs and Class members were injured as a direct and proximate result of Vail Resorts Management's breach because: (a) they would not have purchased or paid for Vail Resorts Management's passes absent Vail Resorts Management's representations and omission of a warning that it would retain members' passholder fees while all mountain resorts nationwide are closed; (b) they would not have purchased passes on the same terms absent Vail Resorts Management's representations and omissions; (c) they paid a price premium for Vail Resorts Management's  passes based on Vail Resorts Management's misrepresentations and omissions; and (d) Vail Resorts Management's passes did not have the characteristics, benefits, or quantities as promised.

//

//

//

## COUNT V
**Negligent Misrepresentation**

80.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

81.     Plaintiffs Hunt and Kodama bring this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed California and Hawaii Epic Pass Subclasses against Vail Resorts Management.

82.     As discussed above, Vail Resorts Management misrepresented that customers would have unlimited access to its mountain resorts, or, for the Epic Day Passes, that they would have access to Vail Resorts Management's mountain resorts for a specified number of days.  However, Vail Resorts Management in fact retains the full price for passes, even when 100 percent of its mountain resorts are closed to the public.

83.     At the time Vail Resorts Management made these representations, Vail Resorts Management knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

84.     At an absolute minimum, Vail Resorts Management negligently misrepresented and/or negligently omitted material facts about its passes and services.

85.     The negligent misrepresentations and omissions made by Vail Resorts Management, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase Vail Resorts Management's passes.

86.     Plaintiffs and Class members would not have purchased Vail Resorts Management's passes, or would not have purchased the services on the same terms, if the true facts had been known.

87.     The negligent actions of Vail Resorts Management caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
### Unjust Enrichment

88.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

89.     Plaintiffs Hunt and Kodama bring this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed California and Hawaii Epic Pass Subclasses against Vail Resorts Management.

90.     Plaintiffs and members of the Class conferred benefits on Vail Resorts Management by paying, and being charged, pass fees while 100 percent of Vail Resorts Management's mountain resorts were and remain closed.

91.     Vail Resorts Management has knowledge of such benefits.

92.     Vail Resorts Management has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' pass fees.  Retention of those moneys under these circumstances is unjust and inequitable because Vail Resorts Management is retaining its customers full pass fees while 100 percent of its mountain resorts remain closed.  These misrepresentations and charges caused injuries to Plaintiffs and members of the Class because they would not have paid Vail Resorts Management's pass fees had the true facts been known.

93.     Because Vail Resorts Management's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT VII
### Money Had and Received

94.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiffs Hunt and Kodama bring this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiffs

also bring this claim individually and on behalf of the members of the proposed California and Hawaii Epic Pass Subclasses against Vail Resorts Management.

96.    Vail Resorts Management received money in the form of pass fees that was intended to be used for the benefit of Plaintiffs and the Class, those pass fees were not used for the benefit of Plaintiffs and the Class, and Vail Resorts Management has not given back or refunded the wrongfully obtained money and pass fees to Plaintiffs and the Class.

97.    Vail Resorts Management obtained money in the form of pass fees that was intended to be used to provide unlimited mountain resort access to Plaintiffs and the Class, or for the Epic Day Passes, that was intended to provide customers with access to Vail Resorts Management mountain resorts for a specified number of days.  However, Vail Resorts Management has retained all of the pass fees while 100 percent of its mountain resorts were and remain closed.

**COUNT VIII**
**Conversion**

98.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

99.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed California and Hawaii Subclasses against Vail Resorts Management.

100.    Plaintiffs and members of the Class had a right to retain their pass fees while all of Vail Resorts Management's mountain resorts were and remain closed; Vail Resorts Management intentionally retained full amount of the Plaintiffs' and Class members' pass fees while Vail Resorts Management's mountain resorts were closed; Plaintiffs and Class members did not consent to Vail Resorts Management's retaining such fees while Vail Resorts Management's mountain resorts are closed; Plaintiff and Class members were harmed through Vail Resorts Management's retention of their pass fees; Vail Resorts Management's conduct was a substantial factor in causing Plaintiffs and Class members' harm.

## COUNT IX
### Breach of Contract

101.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

102.    Plaintiffs Hunt and Kodama bring this claim individually and on behalf of the members of the proposed Nationwide Epic Pass Class against Vail Resorts Management.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed California and Hawaii Epic Pass Subclasses against Vail Resorts Management.

103.    Vail Resorts Management entered into contracts with Plaintiffs and Class members to provide access to its mountain resorts in exchange for the payment of pass fees.  Vail Resorts Management has breached these contracts by retaining and Class members' full pass fees while 100 percent of its mountain remain closed.  Plaintiffs and Class members have suffered an injury through the payment of pass fees while not having access to Vail Resorts Management's mountain resorts.

## COUNT X
### Violation of Hawaii's Unfair Deceptive Acts or Practices Statute
### H.R.S. § 480-1, *et seq.*

104.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

105.    Plaintiff Kodama brings this cause of action on behalf of himself and members of the Hawaii Epic Pass Subclass.

106.    This cause of action is brought pursuant to Hawaii's Unfair Deceptive Acts and Practices Statute ("UDAP"), H.R.S. § 480-1, *et seq.*

107.    Plaintiff and the other members of the Hawaii Epic Pass Subclass are "consumers," as the term is defined by H.R.S. § 480-1 because they are natural persons who, primarily for personal, family, or household purposes, purchased ski passes from Vail Resorts Management.

108.    The conduct alleged in this Complaint constitutes unfair and deceptive acts and practices for the purpose of the UDAP because the conduct was undertaken by Defendant in the conduct of its trade and commerce.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

109.    Plaintiff purchased his ski passes during the statute of limitations period.  With respect to these purchases, Plaintiff reasonably believed that he would be able to use said passes to ski at Vail Resorts Management's resorts.  Plaintiff's belief in this regard was reasonable because Vail Resorts Management's represents that the Epic Day Passes permit consumers to ski on Vail Resorts Management's property during the ski season.

110.    Plaintiff would not have made this purchase, or would have paid less for his ski passes had he known that Vail Resorts Management would close 100% of its mountain resorts for the remained of the ski season.  The same is true for members of the Hawaii Epic Pass Subclass.

111.    As alleged more fully above, Vail Resorts Management has violated the UDAP by representing that their customers would be entitled to access its mountain resorts during the 2019-2020 ski season.

112.    As a result of engaging in such conduct, Vail Resorts Management has violated H.R.S. § 480-2, which declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful.

113.    A practice is "unfair" under the UDAP when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *See Balthazar v. Verizon Haw., Inc.*, 109 Haw. 69, 77, 123 P.3d 194, 202 (2005).

114.    Vail Resorts Management's conduct was of no benefit to ski pass holders who rely on the marketing of Vail Resorts Management in making purchasing decisions.  The indefinite closure of Vail Resorts Management's resorts during the ski season is of no benefit to consumers. Moreover, representing that Vail Resorts Management would provide access to its mountain resorts during the ski season, when it would not, is injurious to customers because it deceived them into purchasing ski passes under the belief that they carried with them certain terms and conditions that they simply did not possess.  Indeed, Plaintiff believed that he would be able to ski during the 2019-2020 ski season.

115.    Plaintiff and the Hawaii Epic Pass Subclass members would not have purchased Epic Passes or would have paid less for them, had they known that they would be not have access

---

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:20-CV-02463-JSW

21

to Vail Resorts Management's ski resorts.  As a result, Vail Resorts Management's conduct is substantially injurious to consumers, including Plaintiff, and such conduct was "unfair."

116.    An act or practice is "deceptive" under the UDAP when it consists of a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances and when the representation, omission, or practice is material.  *See Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 434 (2006).  A representation, omission, or practice is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.  *See id.*

117.    As alleged herein, Vail Resorts Management's conduct was deceptive because it had the effect of deceiving consumers into believing that Vail Resorts Management would provide consumers access to its ski resorts for the 2019-2020 season.  The belief that Vail Resorts Management would provide access to its ski resorts was material because it was important to consumers and influenced Plaintiff's and the Hawaii Epic Pass Subclass members' decision to purchase Vail Resorts Management's ski passes.  Specifically, Plaintiff and the Hawaii Epic Pass Subclass members would not have purchased ski passes, or would have paid less for them, had they known that they would be unable to access Vail Resorts Management's ski resorts.

118.    Because Vail Resorts Management – through its advertising of its ski passes– misled Plaintiff and members of the Hawaii Epic Pass Subclass into believing they would be provided with access to Vail Resorts Management's ski resorts, when they would not, and this caused financial injury to customers by inducing purchases that would not have occurred and/or caused them to pay more for ski passes than they otherwise would have, Vail Resorts Management's conduct was and is "deceptive."

119.    In sum, each of the elements for a claim brought pursuant to H.R.S. § 480-13 is satisfied, in that: (1) Vail Resorts Management has violated H.R.S. § 480-2(a) by committing unfair and deceptive business acts and practices, as set forth above, (2) these unfair and deceptive business acts and practices caused Plaintiff and the Hawaii Epic Subclass members financial harm by inducing purchases that would not have occurred and/or caused them to pay more for the ski passes than they otherwise would have, (3) damages to Plaintiff and the Hawaii Epic Pass Subclass

members can be proven on class-wide basis, and (4) this action is in the public interest because Vail Resorts Management's unfair and deceptive business acts and practices have caused harm to all consumers, and Vail Resorts Management is a merchant that sells the ski passes for profit.

120.    Plaintiff seeks an order requiring Vail Resorts Management to issue prompt refunds to Plaintiff and members of the Hawaii Epic Pass Subclass.

121.    Pursuant to H.R.S. § 480-13(a)(1), Plaintiff also seeks compensatory damages of threefold the damages incurred by himself and the Hawaii Epic Pass Subclass in purchasing the ski passes, as well as reasonable attorney's fees together with the costs of suit.

## COUNT XI
### Violation of Hawaii's Uniform Deceptive Trade Practices Act
### H.R.S. § 481A, *et seq.*
### (Injunctive Relief Only)

122.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

123.    Plaintiff Kodama brings this cause of action on behalf of himself and members of the Hawaii Epic Pass Subclass.

124.    By committing the acts and practices alleged herein, Vail Resorts Management has violated Hawaii's Uniform Deceptive Trade Practices Act ("UDTPA"), H.R.S. § 481A, *et seq.*, as to the Hawaii Epic Pass Subclass.

125.    Vail Resorts Management is a "person" under H.R.S. § 481A-2 because it is a corporation.

126.    Pursuant to Hawaii's UDTPA, Vail Resorts Management has engaged in deceptive trade by engaging in the following conduct:

(a)    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. *See* H.R.S. § 481A-3(a)(5). Vail Resorts Management has represented that it would provide access to its mountain resorts in exchange for a fee, when it would not;

(b)    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *See* H.R.S. §

481A-3(a)(7).  Vail Resorts Management has represented that it would provide access to its mountain resorts in exchange for a fee, when it would not;

(c)    Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.  *See* H.R.S. § 481A-3(a)(7).  Vail Resorts Management has represented that it would provide access to its mountain resorts in exchange for a fee, when it would not;

(d)    Advertising goods or services with the intent not to sell them as advertised.  *See* H.R.S. § 481A-3(a)(7).  Vail Resorts Management has represented that it would provide access to its mountain resorts in exchange for a fee, when it would not.

127.    At all relevant times, Vail Resorts Management has known or reasonably should have known that it would not provide access to its ski resorts and that Plaintiff and other members of the Hawaii Epic Pass Subclass would reasonably and justifiably rely on the packaging and other advertisements in purchasing the ski passes.

128.    Plaintiff and members of the Hawaii Epic Pass Subclass have reasonably and justifiably relied on Vail Resorts Management's misleading, and fraudulent conduct when purchasing the ski passes.  With respect to Plaintiff's purchases, Plaintiff reasonably believed that the ski pass would provide access to Vail Resorts Management's resorts during the 2019-2020 ski season.  Plaintiff's belief in this regard was reasonable because of Vail Resorts Management's marketing and advertising.  Plaintiff would not have made this purchase, or would have paid less for the ski passes, had he known that Vail Resorts Management would close 100% of its ski resorts.  The same is true for members of the Hawaii Epic Pass Subclass.

129.    Moreover, based on the materiality of Vail Resorts Management's deceptive and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the products may be presumed or inferred for Plaintiff and members of the Hawaii Epic Pass Subclass.

130.    Under H.R.S. § 481A-4, Plaintiff and members of the Hawaii Epic Pass Subclass are seeking injunctive relief, preventing Vail Resorts Management from continuing to engage in the wrongful acts and unfair and unlawful business practices described herein.  Plaintiff also seeks

attorneys' fees and costs and all other remedies this Court deems proper pursuant to H.R.S. § 481A-4.

<u>**COUNT XII**</u>
**Violation of Hawaii's False Advertising Law**
**H.R.S. § 708-871,** *et seq.*

131.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

132.    Plaintiff Kodama brings this cause of action on behalf of himself and members of the Hawaii Epic Pass Subclass.

133.    Hawaii's False Advertising Law ("FAL") provides that:

> A person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons.

H.R.S. § 708-871.

134.    Vail Resorts Management has knowingly and recklessly made false and misleading statements to the public, including to Plaintiff and members of the Hawaii Epic Pass Subclass, through its deceptive marketing, that the ski passes would provide access to Vail Resorts Management's ski resorts.  Vail Resorts Management's representations were misleading because it closed 100% of its ski resorts for the remainder of the ski season.  Because Vail Resorts Management have disseminated misleading information regarding the ski passes, and Vail Resorts Management knows, knew, or should have known through the exercise of reasonable care that the representation was misleading, Vail Resorts Management has violated the FAL.

135.    Furthermore, Vail Resorts Management knows, knew or should have known through the exercise of reasonable care that such representation was unauthorized and misleading.

136.    As a result of Vail Resorts Management's false advertising, Vail Resorts Management has fraudulently obtained money from Plaintiff and members of the Hawaii Epic Pass Subclass.

137.    Plaintiff requests that this Court cause Vail Resorts Management to restore this fraudulently obtained money to Plaintiff and members of the Hawaii Epic Pass Subclass, to disgorge the profits Vail Resorts Management made on these transactions, and to enjoin Vail

1   Resorts Management from violating the FAL or violating it in the same fashion in the future as

2   discussed herein.  Otherwise, Plaintiff and members of the Hawaii Epic Pass Subclass may be

3   irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

4   **CAUSES OF ACTION AGAINST ALL DEFENDANTS**

5   **COUNT XIII**
    **Violation of California's Consumers Legal Remedies Act,**
6   **California Civil Code §§ 1750, *et seq*.**
    **(Injunctive Relief Only)**
7

8   138.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding

9   paragraphs of this complaint.

10  139.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of members

11  of the proposed Nationwide Insurance Class against Defendants.

12  140.    Plaintiffs and Class members are consumers who paid fees for use of Defendants'

13  insurance coverage for personal, family or household purposes.  Plaintiff and the Class are

14  "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

15  141.    Defendants' season ski pass insurance that Plaintiff and Class members purchased

16  from Defendants was a "service" within the meaning of Cal. Civ. Code § 1761(b).

17  142.    Defendants' actions, representations, and conduct have violated, and continue to

18  violate the CLRA, because they extend to transactions that intended to result, or which have

19  resulted in, the sale of services to consumers.

20  143.    Defendants' advertising that consumers would receive unforeseen loss insurance

21  coverage upon paying a fee is false and misleading to a reasonable consumer, including Plaintiff,

22  because Defendants in fact refuse to honor the insurance policy while continuing to retain the full

23  price consumers' ski passes and their insurance fees.

24  144.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits

25  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses,

26  benefits, or quantities which they do not have or that a person has a sponsorship, approval, status,

27  affiliation, or connection which he or she does not have."  By engaging in the conduct set forth

28  herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because

1   Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or

2   practices, in that Defendants misrepresent the particular characteristics, benefits and quantities of

3   the services.

4        145.   Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a

5   particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

6   another.  By engaging in the conduct set forth herein, Defendants violated and continues to violate

7   Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of

8   competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the

9   particular standard, quality or grade of the services.

10       146.   Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with

11  intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendant

12  violated and continues to violate Section 1770(a)(9), because Defendants' conduct constitutes

13  unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants

14  advertises services with the intent not to sell the services as advertised.

15       147.   Plaintiffs and the Class acted reasonably when they purchased Defendants' season

16  ski pass insurance on the belief that Defendants' representations were true and lawful.

17       148.   Plaintiffs and the Class suffered injuries caused by Defendants because: (a) they

18  would not have purchased or paid for Defendants' season ski pass insurance absent Defendants'

19  representations and omission of a warning that it would retain insureds' passholder and insurance

20  fees while all mountain resorts nationwide are closed; (b) they would not have purchased season

21  ski pass insurance on the same terms absent Defendants' representations and omissions; (c) they

22  paid a price premium for Defendants' season ski pass insurance based on Defendants'

23  misrepresentations and omissions; and (d) Defendants' season ski pass insurance did not have the

24  characteristics, benefits, or quantities as promised.

25       149.   Under California Civil Code § 1780(a), Plaintiffs Kodama and Odell, and members

26  of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA.  Plaintiffs

27  have mailed an appropriate demand letter consistent with California Civil Code § 1782(a).  If

28

Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiffs will amend the complaint to include a request for damages as permitted by Civil Code § 1782(d).

150.    Wherefore, Plaintiffs seek injunctive and equitable relief for these violations of the CLRA.

## COUNT XIV
### Violation of California's Unfair Competition Law,
### California Business & Professions Code §§ 17200, *et seq.*

151.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

152.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.

153.    Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

154.    Defendants' advertising that its insureds would be covered from loss due to unforeseen events in exchange for an insurance fee is false and misleading to a reasonable consumer, including Plaintiffs, because Defendants in fact are denying coverage for a covered event resulting from Vail Resort Management's resort closures while continuing to retain the full price of customers' passes and insurance fees.

155.    Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and other applicable law as described herein.

156.    Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendants' advertising of their season ski pass insurance and their denial of insurance coverage is of no benefit to consumers.

157.    Defendants violated the fraudulent prong of the UCL by misleading Plaintiffs and the Class to believe that they would have loss coverage in the event of an unforeseen peril.

158.    Plaintiffs and the Class acted reasonably when they signed up for season ski pass insurance based on the belief that they would have coverage in the event of an unforeseen peril.

159.    Plaintiffs and the Class lost money or property as a result of Defendants' UCL violations because Plaintiffs and the Class suffered injuries caused by Defendant because: (a) they would not have purchased or paid for Defendants' season ski pass insurance absent Defendants' representations and omission of a warning that it would retain insureds' passholder and insurance fees while all mountain resorts nationwide are closed; (b) they would not have purchased season ski pass insurance on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' season ski pass insurance based on Defendants' misrepresentations and omissions; and (d) Defendants' season ski pass insurance did not have the characteristics, benefits, or quantities as promised.

## COUNT XV
**Violation of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq*.**

160.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

161.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.

162.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

163.    Defendants engaged in a scheme of retaining customers pass and insurance fees by denying insurance coverage for an unforeseen peril covered by the insurance policy.  Defendants' advertising and marketing of their season ski passes as providing coverage in the event of an unforeseen event misrepresented and/or omitted the true content and nature of Defendants'

services.  Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the promotional materials were intended as inducements to purchase passes, and are statements disseminated by Defendants to Plaintiffs and Class members.  Defendants knew that these statements were unauthorized, inaccurate, and misleading.

164.    Defendants' advertising that season ski pass insurance holders would be covered in the event of an unforeseen peril upon paying an passholder fee is false and misleading to a reasonable consumer, including Plaintiffs, because Defendants in fact are denying insurance coverage while retaining the full price of customers' passes and insurance fees.

165.    Defendants violated § 17500, *et seq*. by misleading Plaintiffs and the Class to believe that they would be covered in the event of an unforeseen peril, including a quarantine.

166.    Defendants knew or should have known, through the exercise of reasonable care that their advertising that the season ski pass insurance would cover unforeseen perils is false and misleading.  Further, Defendants knew or should have known that they were breaching their contracts with their customers and fraudulently retaining fees when they denied insurance coverage after the ski resorts were closed indefinitely.

167.    Plaintiffs and the Class lost money or property as a result of Defendants' FAL violation because Plaintiffs and the Class suffered injuries caused by Defendant because: (a) they would not have purchased or paid for Defendants' season ski pass insurance absent Defendants' representations and omission of a warning that it would retain insureds' passholder and insurance fees while all mountain resorts nationwide are closed; (b) they would not have purchased season ski pass insurance on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' season ski pass insurance based on Defendants' misrepresentations and omissions; and (d) Defendants' season ski pass insurance did not have the characteristics, benefits, or quantities as promised.

//

//

//

## COUNT XVI
### Breach of Express Warranty

168.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

169.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed Hawaii and Tennessee Insurance Subclasses against Defendants.

170.    In connection with the sale of ski insurance Defendants issue an express warranty that insureds would be covered for unforeseen perils, including sickness, quarantine, and natural disasters.

171.    Defendants' affirmation of fact and promise in Defendants' marketing and contracts became part of the basis of the bargain between Defendants and Plaintiffs and Class members, thereby creating express warranties that the services would conform to Defendants' affirmation of fact, representations, promise, and description.

172.    Defendants breached their express warranty because Defendants do not provide insurance coverage for covered perils.  In fact, Defendants have retained the full amount of their insureds' pass  and insurance fees while denying insurance coverage under the policy.

173.    Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased or paid for Defendants' season ski pass insurance absent Defendants' representations and omission of a warning that it would retain insureds' passholder and insurance fees while all mountain resorts nationwide are closed; (b) they would not have purchased season ski pass insurance on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' season ski pass insurance based on Defendants' misrepresentations and omissions; and (d) Defendants' season ski pass insurance did not have the characteristics, benefits, or quantities as promised.

## COUNT XVII
### Negligent Misrepresentation

174.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

175.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed Hawaii and Tennessee Insurance Subclasses against Defendants.

176.    As discussed above, Defendants misrepresented that insureds would have season ski pass coverage in the event of unforeseen perils.  However, Defendants in fact retain the full price for passes and insurance, despite denying coverage for a covered event under the policy.

177.    At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

178.    At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about their insurance policy and services.

179.    The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase Defendants' season ski pass insurance.

180.    Plaintiffs and Class members would not have purchased Defendants' season ski pass insurance, or would not have purchased the services on the same terms, if the true facts had been known.

181.    The negligent actions of Defendants caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT XVIII
### Unjust Enrichment

182.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

183.     Plaintiffs Kodama and Hunt bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed Hawaii and Tennessee Subclasses against Defendants.

184.     Plaintiffs and members of the Class conferred benefits on Defendants by paying, and being charged, insurance fees while Defendants refused coverage for unforeseen perils covered by the season ski pass policy.

185.     Defendants have knowledge of such benefits.

186.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' pass and insurance fees.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants are retaining their customers full pass and insurance fees while denying coverage under the ski pass policy.  These misrepresentations and charges caused injuries to Plaintiffs and members of the Class because they would not have paid Defendants' insurance fees had the true facts been known.

187.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for their unjust enrichment, as ordered by the Court.

<u>**COUNT XIX**</u>
**Money Had and Received**

188.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

189.     Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed Hawaii and Tennessee Insurance Subclasses against Defendants.

190.     Defendants received money in the form of pass and insurance fees that were intended to be used for the benefit of Plaintiffs and the Class, those fees were not used for the

benefit of Plaintiffs and the Class, and Defendants have not given back or refunded the wrongfully obtained money and fees to Plaintiffs and the Class.

191.    Defendants obtained money in the form of pass and insurance fees that was intended to be used to provide insurance coverage to Plaintiffs and the Class.  However, Defendants have retained all of the pass and insurance fees while denying insurance coverage under the season ski pass policy.

**COUNT XX**
**Conversion**

192.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

193.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed Hawaii and Tennessee Insurance Subclasses against Defendants.

194.    Plaintiffs and members of the Class had a right to retain their pass and insurance fees while all of Vail Resort Management's mountain resorts were and remain closed; Defendants intentionally retained full amount of the Plaintiffs' and Class members' pass  and insurance fees while denying coverage under the season ski pass policy; Plaintiffs and Class members did not consent to Defendants' retaining such fees while Vail Resort Management's mountain resorts are closed; Plaintiffs and Class members were harmed through Defendants' retention of their pass and insurance fees; Defendants' conduct was a substantial factor in causing Plaintiff and Class members' harm.

**COUNT XXI**
**Breach of Contract**

195.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

196.    Plaintiffs Kodama and Odell bring this claim individually and on behalf of the members of the proposed Nationwide Insurance Class against Defendants.  Plaintiffs also bring this claim individually and on behalf of the members of the proposed Hawaii and Tennessee Subclasses against Defendants.

197.     Defendants entered into contracts with Plaintiffs and Class members to provide insurance coverage in the event of an unforeseen peril.  Defendants have breached these contracts by retaining and Class members' full pass and insurance fees while denying coverage under the season ski pass policy.  Plaintiffs and Class members have suffered an injury through the payment of pass and insurance fees while being denied insurance coverage despite the existence of a covered unforeseen peril.

### COUNT XXII
**Violation of Hawaii's Unfair Deceptive Acts or Practices Statute**
**H.R.S. § 480-1, *et seq.***

198.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

199.     Plaintiff Kodama brings this cause of action on behalf of himself and members of the Hawaii Insurance Subclass.

200.     This cause of action is brought pursuant to Hawaii's Unfair Deceptive Acts and Practices Statute ("UDAP"), H.R.S. § 480-1, *et seq*.

201.     Plaintiff and the other members of the Hawaii Insurance Subclass are "consumers," as the term is defined by H.R.S. § 480-1 because they are natural persons who, primarily for personal, family, or household purposes, purchased season ski pass insurance from Defendants.

202.     The conduct alleged in this Complaint constitutes unfair and deceptive acts and practices for the purpose of the UDAP because the conduct was undertaken by Defendants in the conduct of their trade and commerce.

203.     Plaintiff purchased his ski pass insurance during the statute of limitations period. With respect to these purchases, Plaintiff reasonably believed that, in the event that they were to experience an unforeseen peril, Plaintiff would be issued a prompt refund of his ski pass price. Plaintiff's belief in this regard was reasonable because Defendants represent in their certificate of insurance that the insurance would cover unforeseen perils, such as natural disasters, sickness, and quarantine.

204.     Plaintiff would not have made this purchase, or would have paid less for his season ski pass insurance, had he known that he would be denied coverage for a covered peril under the insurance agreement.  The same is true for members of the Hawaii Subclass.

1

2

3

205.    As alleged more fully above, Defendants have violated the UDAP by representing that their customers would be entitled to insurance coverage for covered perils, when in fact Defendants are denying coverage under the insurance policy for such perils.

4

5

6

206.    As a result of engaging in such conduct, Defendants have violated H.R.S. § 480-2, which declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful.

7

8

9

207.    A practice is "unfair" under the UDAP when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *See Balthazar v. Verizon Haw., Inc.*, 109 Haw. 69, 77, 123 P.3d 194, 202 (2005).

10

11

12

13

14

15

16

17

208.    Defendants' conduct was of no benefit to ski pass holders who rely on the marketing of insurance companies in making purchasing decisions.  Failing to cover an unforeseen peril in accordance with the insurance policy  is of no benefit to consumers.  Moreover, representing that Defendants would cover an included unforeseen loss, when they would not, is injurious to customers because it deceived them into ski passes and season ski pass insurance under the belief that it carried with it certain terms and conditions that it simply did not possess.  Indeed, Plaintiff believed that the ski passes he purchased would be refunded under the insurance policy of his ski pass based on the certificate of insurance provided by Defendants.

18

19

20

21

209.    Plaintiff and the Hawaii Insurance Subclass members would not have purchased season ski pass insurance, or would have paid less for them, had they known that they would be denied coverage for a covered loss.  As a result, Defendants' conduct is substantially injurious to consumers, including Plaintiff, and such conduct was "unfair."

22

23

24

25

26

27

210.    An act or practice is "deceptive" under the UDAP when it consists of a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances and when the representation, omission, or practice is material.  *See Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 434 (2006).  A representation, omission, or practice is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.  *See id.*

28

1    211. As alleged herein, Defendants' conduct was deceptive because it had the effect of

2 deceiving consumers into believing that Defendants would cover losses relating to unforeseen

3 perils listed in the agreement.  The belief that Defendants would promptly refund ski pass fees in

4 the event of an unforeseen peril was material because it was important to consumers and influenced

5 Plaintiff's and the Hawaii Insurance Subclass members' decision to purchase Defendant's season

6 ski pass insurance.  Specifically, Plaintiff and the Hawaii Subclass members would not have

7 purchased season ski pass with Hawaiian, or would have paid less for them, had they known that

8 they would be denied coverage for unforeseen perils covered by the insurance policy..

9    212. Because Defendants – through their advertising of their  season ski pass insurance –

10 misled Plaintiff and members of the Hawaii Insurance Subclass into believing they would be

11 covered by the insurance policy in the event of an unforeseen peril, and this caused financial injury

12 to customers by inducing purchases that would not have occurred and/or caused them to pay more

13 for season ski pass insurance than they otherwise would have, Defendants' conduct was and is

14 "deceptive."

15    213. In sum, each of the elements for a claim brought pursuant to H.R.S. § 480-13 is

16 satisfied, in that: (1) Defendants have violated H.R.S. § 480-2(a) by committing unfair and

17 deceptive business acts and practices, as set forth above, (2) these unfair and deceptive business

18 acts and practices caused Plaintiff and the Hawaii Subclass members financial harm by inducing

19 purchases that would not have occurred and/or caused them to pay more for the season ski pass

20 insurance than they otherwise would have, (3) damages to Plaintiff and the Hawaii Insurance

21 Subclass members can be proven on class-wide basis, and (4) this action is in the public interest

22 because Defendants' unfair and deceptive business acts and practices have caused harm to all

23 consumers, and Defendants are merchants that sells the season ski pass insurance policy for profit.

24    214. Plaintiff seeks an order requiring Defendants to issue prompt refunds or insurance

25 coverage to Plaintiff and members of the Hawaii Insurance Subclass.

26    215. Pursuant to H.R.S. § 480-13(a)(1), Plaintiff also seeks compensatory damages of

27 threefold the damages incurred by himself and the Hawaii Subclass in purchasing the season ski

28 pass insurance, as well as reasonable attorney's fees together with the costs of suit.

## COUNT XXIII
### Violation of Hawaii's Uniform Deceptive Trade Practices Act
### H.R.S. § 481A, *et seq.*
### (Injunctive Relief Only)

216.   Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

217.   Plaintiff Kodama brings this cause of action on behalf of himself and members of the Hawaii Insurance Subclass.

218.   By committing the acts and practices alleged herein, Defendants have violated Hawaii's Uniform Deceptive Trade Practices Act ("UDTPA"), H.R.S. § 481A, et seq, as to the Hawaii Insurance Subclass.

219.   Defendants are "persons" under H.R.S. § 481A-2 because they are corporate entities.

220.   Pursuant to Hawaii's UDTPA, Defendants have engaged in deceptive trade by engaging in the following conduct:

(a)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.  *See* H.R.S. § 481A-3(a)(5).  Defendants have represented that they would provide insurance coverage in the event of an unforeseen peril, when Defendants would not;

(b)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  *See* H.R.S. § 481A-3(a)(7).  Defendants have represented that they will would provide insurance coverage in the event of an unforeseen peril, when Defendants would not;

(c)   Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.  *See* H.R.S. § 481A-3(a)(7).  Defendants' certificate of insurance represented that Defendants would provide insurance coverage in the event of an unforeseen peril, when Defendants would not; and

(d)   Advertising goods or services with the intent not to sell them as advertised.  *See* H.R.S. § 481A-3(a)(7).  Defendants have represented that they would provide insurance coverage for covered unforeseen perils, when Defendants would not.

221.    At all relevant times, Defendants have known or reasonably should have known that they would not provide insurance coverage for covered unforeseen perils and that Plaintiff and other members of the Hawaii Insurance Subclass would reasonably and justifiably rely on the packaging and other advertisements in purchasing the season ski pass insurance.

222.    Plaintiff and members of the Hawaii Insurance Subclass have reasonably and justifiably relied on Defendants' misleading, and fraudulent conduct when purchasing the season ski pass insurance  With respect to Plaintiff's purchases, Plaintiff reasonably believed that the season ski pass insurance would cover listed unforeseen losses.  Plaintiff's belief in this regard was reasonable because of the certificate of insurance.  Plaintiff would not have made this purchase, or would have paid less for the season ski pass insurance, had he known that Defendants would deny coverage under the insurance policy for covered unforeseen events.  The same is true for members of the Hawaii Insurance Subclass.

223.    Moreover, based on the materiality of Defendants' deceptive and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the products may be presumed or inferred for Plaintiff and members of the Hawaii Insurance Subclass.

224.    Under H.R.S. § 481A-4, Plaintiff and members of the Hawaii Subclass are seeking injunctive relief, preventing Defendants from continuing to engage in the wrongful acts and unfair and unlawful business practices described herein.  Plaintiff also seeks attorneys' fees and costs and all other remedies this Court deems proper pursuant to H.R.S. § 481A-4.

## COUNT XXIV
### Violation of Hawaii's False Advertising Law
### H.R.S. § 708-871, *et seq.*

225.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

226.    Plaintiff Kodama brings this cause of action on behalf of himself and members of the Hawaii Subclass.

227.    Hawaii's False Advertising Law ("FAL") provides that:

A person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly

makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons.

H.R.S. § 708-871.

228.     Defendants have knowingly and recklessly made false and misleading statements to the public, including to Plaintiff and members of the Hawaii Insurance Subclass, through Defendants' deceptive marketing, that the season ski pass insurance would cover listed unforeseen perils.  Defendants' representations were misleading because they would not provide coverage for listed unforeseen perils.  Because Defendants have disseminated misleading information regarding the season ski pass insurance, and Defendants know, knew, or should have known through the exercise of reasonable care that the representation was misleading, Defendants have violated the FAL.

229.     Furthermore, Defendants know, knew, or should have known through the exercise of reasonable care that such representation was unauthorized and misleading.

230.     As a result of Defendants' false advertising, Defendants have fraudulently obtained money from Plaintiff and members of the Hawaii Insurance Subclass.

231.     Plaintiff requests that this Court cause Defendants to restore this fraudulently obtained money to Plaintiff and members of the Hawaii Insurance Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff and members of the Hawaii Insurance Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a)     For an order certifying the Nationwide Epic Pass Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Hunt and Kodama as representatives of the Nationwide Epic Pass Class and Plaintiffs' attorneys as Class Counsel to represent the Nationwide Epic Pass Class members; an order certifying the California Epic Pass

Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Hunt as representative of the California Epic Pass Subclass and Plaintiffs' attorneys as Class Counsel to represent the California Epic Pass Subclass members; an order certifying the Hawaii Epic Pass Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Kodama as representative of the Hawaii Epic Pass Subclass and Plaintiffs' attorneys as Class Counsel to represent the Hawaii Epic Pass Subclass members;

b)   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Kodama and Odell as representatives of the Nationwide Insurance Class and Plaintiffs' attorneys as Class Counsel to represent the Nationwide Insurance Class members; an order certifying the Hawaii Insurance Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Kodama as representative of the Hawaii Insurance Subclass and Plaintiffs' attorneys as Class Counsel to represent the Hawaii Insurance Subclass members; and an order certifying the Tennessee Insurance Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Odell as representative of the Tennessee Insurance Subclass and Plaintiffs' attorneys as Class Counsel to represent the Tennessee Insurance Subclass members;

c)   For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

d)   For an order finding in favor of Plaintiffs, the Nationwide Epic Pass Class, the Nationwide Insurance Class, the California Epic Pass Subclass, the California Insurance Subclass, the Hawaii Epic Pass Subclass, the Hawaii Insurance Subclass, and the Tennessee Insurance Subclass on all counts asserted herein;

e)   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

f)   For prejudgment interest on all amounts awarded;

g)   For an order of restitution and all other forms of equitable monetary relief;

1

h)     For injunctive relief as pleaded or as the Court may deem proper; and

2

i)     For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and

3

      expenses and costs of suit.

4

## JURY DEMAND

5

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

6

7

Dated: April 29, 2020                 **BURSOR & FISHER, P.A**.

8

                              By:    */s/ Brittany S. Scott*
                                      Brittany S. Scott

9

10

                             Yeremey Krivoshey (State Bar No. 295032)
                             Brittany S. Scott (State Bar No. 327132)

11

                             1990 North California Blvd., Suite 940
                             Walnut Creek, CA 94596

12

                             Telephone: (925) 300-4455
                             Facsimile:  (925) 407-2700

13

                             E-mail: ykrivoshey@bursor.com
                                  bscott@bursor.com

14

15

                             **BURSOR & FISHER, P.A.**

16

                             Scott A. Bursor (State Bar No. 276006)
                             2665 S. Bayshore Dr., Suite 220

17

                             Miami, FL 33133-5402
                             Telephone: (305) 330-5512

18

                             Facsimile: (305) 676-9006
                             E-Mail: scott@bursor.com

19

20

                             *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Brittany S. Scott, declare as follows:

      1.     I am an attorney at law licensed to practice in the State of California and I am member of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

      3.     I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Oakland, California this 29th day of April, 2020.

                                           */s/ Brittany S. Scott*
                                           Brittany S. Scott

**EXHIBIT A**

### CERTIFICATE OF SEASON SKI PASS INSURANCE

**UNITED SPECIALTY INSURANCE COMPANY**
**SEASON SKI PASS INSURANCE COVERAGE UNDER MASTER POLICY NUMBER: EYHBDISP0317**
This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by United Specialty Insurance Company.
Please keep this document as your record of coverage under the plan.

**INSURING AGREEMENT:** We will provide insurance under the Master Policy in consideration of your payment of the Premium.
**EFFECTIVE DATE OF COVERAGE:** This insurance will be effective immediately upon acceptance by us of the Premium and shall remain in effect until the last day of the Ski/Snowboard Season or the date upon which ski operations are ceased due to an unforeseen event, whichever is earlier.
**PROPERTY INSURED AND COVERAGE LIMITS:** We cover the Season Ski Pass Cost you paid.  We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril.  We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

**PERILS INSURED AGAINST:** Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils _occurring after the effective date of coverage:_

a) Sickness, Injury or death of you or a Family Member;
b) You have a Pregnancy or Childbirth verified by medical records; coverage is included for pregnant Season Ski Pass Holder's spouse or domestic partner and  minor child;
c) Your Primary Residence being made Uninhabitable by Natural Disaster;
d) The Destination Resort closes indefinitely due to a Natural Disaster (this coverage does not apply if you reside in a state with more than one Destination Resort and at least one of the other Destination Resorts is operating);
e) You are subpoenaed, required to serve on a jury, hijacked, quarantined or your travel visa is denied;
f) You are called to military service:  your military leave is revoked; you are deployed or you are reassigned;

g) You **or a resident relative** have an involuntary, employer-initiated transfer that: (i) is within the same organization for which you **or a resident relative** have been continuously employed for at least one year immediately preceding the transfer; and **(ii)** involves your **or a resident relatives** relocation to a Primary Residence 100 or more miles from your current Primary Residence;
h) You **or a resident relative** are involuntarily terminated or laid off by an employer for whom you **or a resident relative** have been continuously employed for at least one-year immediately preceding the termination or lay off; or involves a non-renewal of a work visa.  This provision is not applicable to temporary employment, independent contractors or self-employed persons;
i) You are a Student (i) who transfers to a school located 100 or more miles from your current school; (ii) who is accepted into a foreign study program that will cause you to be out of the country during the ski season: (iii) who graduates and accepts a job that is 100 or more miles from your current residence.
j) You are unable to use your Season Ski Pass due to the inability to travel to the United States due to a U.S. Tourist Visa rejection or denial or failure to obtain the visa required to enter the United States.  Evidence of visa application and copy of formal rejection or denial will be required as proof of loss.

**EXCLUSIONS:** We do not cover any Loss caused by or resulting from:

a) an intentional act, except for suicide or attempted suicide by you or a family member.
b) any felony or criminal acts committed by you;
c) mental, nervous or psychological conditions or disorders, including but not limited to: anxiety, depression, neurosis, phobia, psychosis, or any related physical manifestations thereof;
d) use of narcotics, controlled substances or alcohol;
e) Loss that occurs when this coverage is not in effect;
f) An Injury, Sickness or other medical condition which, within the 120 day period immediately preceding your coverage effective date: (i) first manifested itself, worsened or became acute or had symptoms which would have prompted a reasonable person to seek diagnosis, care or treatment: (ii) for which care or treatment was given or recommended by a Physician: or (iii) required taking prescription drugs or medicines, unless the condition for which the drugs or medicines are taken remains controlled without any change in the required prescription drugs or medicines.
g) Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack,  by  any  government  or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces: or by military, naval or air forces or by an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such governmental power, authority or forces. Civil disorder, riot, insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence, and seizure or destruction under quarantine, or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

Exclusion g. is waived if the following conditions are met:  1. The Season Ski Pass Insurance is purchased  at the same time you  make the Initial Payment for the Season Ski Pass: or 2. All the Insured's are medically able to ski/snowboard when the Season Ski Pass Insurance Cost is paid.   The Initial Payment means the first payment made to the Insured's Season Ski Pass Supplier toward the cost of the Season Ski Pass.

**DEFINITIONS:**
**DAILY RATE** – means $95 per day for an adult pass (age 13 and up) at all Destination Resorts except: $50 per day at Stevens Pass, Okemo, Stowe and Sunapee; $35 per day at Afton Alps, Mt. Brighton and Wilmot Mtn.  **DAILY RATE** for a child pass (age 12 and under) is $35 per day at all Destination Resorts except $15 per day at Afton Alps, Mt. Brighton and Wilmot Mtn.  The DAILY RATE does not apply to Epic Day Pass. Usage reduction for Epic Day pass will be pro-rated for each usage day and if all days have been used there is no refund.
**DESTINATION RESORT** – means the ski resort where you expected to use your Season Ski Pass.
**INJURY** – in the case of you means accidental bodily injury that occurs while your coverage is in effect that prevents your use of your Season Ski Pass, as certified by a Physician at the time of Loss: and as to a Family Member, means accidental bodily injury that occurs while your coverage is in effect and that is either life threatening or requires your care, as certified by a Physician.
**INSURED** – means any person for whom the Premium has been paid and accepted by us.
**FAMILY MEMBER** - means the Season Ski Pass Holder's spouse, child, domestic partner, daughter-in-law, son-in-law, brother, sister, mother, father, grandparents, grandchild, step-child, step-brother, step-sister, step-parents, parents-in-law, brother-in-law, sister-in-law, aunt, uncle, niece, nephew, legal guardian, caregiver, foster child, ward or legal ward.
**LOSS –** means your inability to use your Season Ski Pass due to an unforeseen event, occurrence or circumstance.
**NATURAL DISASTER** – means a flood, hurricane, tornado, earthquake, fire, wildfire, volcanic eruption, or blizzard that is due to natural causes.
**PHYSICIAN** – means a licensed practitioner including medical, surgical, or dental, services acting within the scope of his/her license.  The treating Physician may not be the Season Ski Pass Holder, Insured, a traveling companion, a Family Member, or a business partner.
**PREMIUM** – means the amount paid for the Season Ski Pass insurance coverage.  Premium is 100% fully earned at inception. Premium includes 3% Colorado Surplus Lines Tax.
**PRIMARY RESIDENCE** – means your fixed, permanent and principal home for legal and tax purposes.
**RESIDENT RELATIVE** – means a person who is either the spouse (or domestic partner) or blood relation of the Insured and lives in the same home.
**SEASON SKI PASS HOLDER** – means the person whose name and likeness appear on the Season Ski Pass issued by the Season Ski Pass Supplier.

**SEASON SKI PASS SUPPLIER** – means any company that provides a Season Ski Pass for purchase.

**SEASON SKI PASS** – means any lift ticket access pass for multiple day usage throughout the duration of the Ski/Snowboard Season.

**SICKNESS** – in the case of you means an illness or disease diagnosed while your coverage is in effect that is treated by a Physician and that prevents your use of your Season Ski Pass, as certified by a Physician at the time of Loss; and as to a Family Member means an illness or disease diagnosed while your coverage is in effect that is treated by a Physician that is either life threatening or requires your care, as certified by a Physician.

**SKI/SNOWBOARD SEASON** –  the period starting on October 15, 2019 and ending on April 15, 2020.

**SEASON SKI PASS COST** – means the purchase price of the Season Ski Pass.

**STUDENT** – means college student with at least twelve (12) credits for undergrads or six (6) for graduate students.

**UNINHABITABLE** – means the building structure is unstable and there is risk of collapse in whole or in part; or there is exterior or structural damage allowing elemental intrusions, such as rain, wind, hail or flood; or there are immediate safety hazards that have yet to be cleared and the home cannot be occupied.

**WE, US, or OUR** – means United Specialty Insurance Company.

**YOU or YOUR** – means the Insured, as the context requires.

**TERMINATION OF INSURANCE:** This insurance shall automatically terminate without notice to you on the last day of the Ski/Snowboard Season.

**VALUATION:** The value of the Season Ski Pass will be determined at the time of Loss and will be the Season Ski Pass Cost minus the applicable Daily Rate for each day (or portion thereof) that you have used of your Season Ski Pass during the Ski/Snowboard Season.

**OTHER INSURANCE:** If a Loss is also covered by other insurance, we will pay only the proportion of the Loss that this amount of insurance bears to the total amount of insurance covering the Loss.

**DUTIES YOU HAVE AFTER A LOSS:** You will give prompt notice to our authorized representative, listed below.  The notice should include: a description of the Loss, the name of the Season Ski Pass Supplier, the Season Ski Pass Cost, and the date the Season Ski Pass was purchased.  All claims under the Policy **must be submitted as soon as reasonably possible but, in any event, no later than July 15, 2020.**

|  |  |  |
|---|---|---|
| IF YOU HAVE A LOSS: | American Claims Management | Telephone  #1-877-895-1297 |
| write to: | P.O. Box 9030 | *International Calling:  +1-385-219-3411* |
|  | Carlsbad, CA  92011-9030 |  |
| Or email to: | NewLosses@ACMClaims.com | Or fax #760-827-4081 |
| Or report online via smartphone or computer | https://www.acmclaims.com/secureforms2/claim/vail |  |

**PROOF OF LOSS:**  Documentation requested must be provided to American Claims Management no more than 90 days after a covered Loss occurs or claim is made, or as soon after that as is reasonably possible.  Failure to provide acceptable proof of loss will cause your claim to be closed without payment.

**CONCEALMENT, MISREPRESENTATION AND FRAUD:** If you commit fraud by intentionally concealing or misrepresenting a material fact concerning the insurance evidenced by this Certificate you will void your insurance under this policy and be subject to prosecution.

**EXAMINATION UNDER OATH:** Before recovering for any Loss, if requested, you:
Will send us a sworn statement of loss containing the information we request to settle your claim within 60 days of our request:
Will agree to examinations under oath at our request:
Will produce others for examination under oath at our request:
Will provide us with all pertinent records needed to prove the loss: and
Will cooperate with us in the investigation or settlement of the loss

**LOSS PAYMENT/OTHER RECOVERIES:** We will pay or make good any covered Loss under the insurance evidenced by this Certificate within 30 days after we reach agreement with you, or the entry of final judgment or the filing of an arbitration award, whichever is earlier.  We will not be liable for any part of a Loss which has been paid or made good by others.

**LEGAL ACTION AGAINST US:** No one may bring legal action against us unless there has been full compliance with all terms of the insurance evidenced by this Certificate: and such action is brought within one  year after you first have knowledge of a Loss.

**TRANSFER OF COVERAGE:** Coverage under the policy cannot be transferred by the Insured to anyone else.

**OPTIONAL ARBITRATION:**  In the event you and we fail to agree as to the interpretation or applicability of any of the terms of our Insurance, you may elect to resolve the disagreement by binding arbitration in accordance with the statutory rules and procedures of the state of Colorado or in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  This option is granted to you subject to the following terms and conditions:

Any arbitration claim instituted to determine coverage under the insurance evidenced by this Certificate must be filed within one year of the occurrence causing the Loss (which in the case of Sickness is the date you first experience symptoms, and in the case of Injury is the date the Injury occurs).

This optional arbitration clause is intended to grant an additional right to you.  All other terms and conditions of this contract remain the same, and no rights or duties of yours or ours shall be diminished or negated by reason of this clause or exercise of this option.

**CANCELLATION:**  The insurance evidenced by this Certificate may be canceled at any time by you, upon providing notice in writing to us or Beecher Carlson Insurance Services LLC. Premium is fully earned and there shall be no return premium due you.

**CHANGES:**  This Certificate and the Master Policy contains agreements between you and us concerning the insurance afforded. This Certificate's terms can be amended or waived only by endorsement issued by us and made a part of the Master Policy.

**SERVICE OF SUIT:**  In the event the Company fails to pay any amount claimed to be due, the Company, at the insured's request, will submit to a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designated the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IF YOU HAVE ANY QUESTIONS REGARDING THE INSURANCE COVERAGE PROVIDED BY THIS CERTIFICATE:  Please contact your agent:**

|  |  |
|---|---|
| Beecher Carlson Insurance Services | *Telephone  # 303-996-5456 or #303-996-5413* |
| 8000 E. Maplewood Ave.,  Suite 350 | *Or fax #770-870-3067* |
| Greenwood Village, CO  80111 | *Or email:  btaylor@beechercarlson.com or shayes@beechercarlson.com* |

*This contract is delivered as a surplus lines coverage under the "Nonadmitted Insurance Act".  The insurer issuing this contract is not licensed in Colorado but is an approved nonadmitted insurer.  There is no protection under the provisions of the "Colorado Guaranty Association Act."*